UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02759-WYD

LYNETTE ZUCKERMAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER**

    THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits and supplemental security income. For the reasons stated below, this case is remanded for further fact finding.

I.    BACKGROUND

    Plaintiff was born in December 1967, and was 40 years old at the time of the application filed on February 21, 2008. (Transcript ["Tr."], 81-83). Plaintiff alleged that she had been unable to work since March 2007 due to: epilepsy, cognitive problems. loss of comprehension, short term memory loss, long term memory loss, depression, brain damage, stability unstable, mental, headaches, and stomach pain. (*Id.* 109.)

    The ALJ found in her decision that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010. (Tr. 14.) She also found that Plaintiff has not engaged in substantial gainful activity since March 28, 2007, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff has a severe

impairment of seizure disorder.  (*Id.* 14-15.)  While she recognized that Plaintiff also suffered from depression, she found it was not a severe impairment as "the evidence does not support that this condition results in significant, ongoing functional limitations." (*Id.*)  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* 16.)

At step four, the ALJ found that Plaintiff has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she is able to perform simple, unskilled tasks involving one, two, or three step instructions. . . ."  (Tr. 19.)  She then found that Plaintiff is unable to perform her past work.  (*Id.*)  At step five, considering Plaintiff's age (a younger individual age 18-41), education (high school), work experience and RFC, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 19-20.) Accordingly, she found that Plaintiff was not disabled.

The Appeals Council declined to exercise jurisdiction (Tr.4-6), which was the final agency decision.  Plaintiff timely requested judicial review.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

II.     ANALYSIS

     A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).

### B.    Whether the ALJ's Decision is Supported by Substantial Evidence

#### 1.    Whether the ALJ Failed to Properly Consider all of Plaintiff's Impairments and/or Violated the Medical Opinion Standards

The first issue I address is whether the ALJ failed to properly address Plaintiff's depression and other noted mental impairments, including a potential cognitive impairment.  While the ALJ recognized that Plaintiff suffers from depression, she found it was not severe at step two as "the evidence does not support that this condition results in significant, ongoing functional limitations." (Tr. 14.)  She did not consider whether any other mental impairments were severe.  I agree with Plaintiff that the ALJ erred in assessing Plaintiff's depression and/or other mental impairments.

I first note that the ALJ must determine at step two whether the claimant's alleged impairments are "severe."  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at

*1 (10th Cir. Dec. 8, 2004) (unpublished) (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c)).[1]  "'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  *Id.* (citing 20 C.F.R. §§ 404.1521(a); 416.921(a)).  "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'"  *Id.* (quotation omitted).

"In light of these definitions, case law prescribes a very limited role for step two analysis."  *Lee*, 2004 WL 2810224, at *1.  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."  *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

In this case, Plaintiff's medical records date back to 1993, when she was treated for seizure disorder and possible depression.  (*See, e.g.*, Tr. 327).  In August 1993, she was prescribed an anti-depressant as well as anti-convulsant medication.  (*Id.*, 325, 328.)  In January 2008, upon Plaintiff's discharge from the hospital after she overdosed on several prescribed medications, Dr. Purcell noted that Plaintiff had a long standing

---

[1] Citation to this and other unpublished opinions in this Order are made because I find that they have persuasive value and will assist in the disposition of this case.  *See* 10th Cir. R. 32.1(A).

history of depression, seizures and alcohol abuse (*id.* 137) and diagnosed major depression (recurrent, severe, no psychosis.) (*Id.* 138.) She also assigned Plaintiff a GAF score of 45 to 50 (*id.* 137, 444), indicating serious symptoms or serious impairments in social, occupational, or school functioning. *Lee*, 2004 WL 2810224, at *3. While, "[s]tanding alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work. . . . [a] GAF score of fifty or less . . . suggest[s] an inability to keep a job." *Id.*[2] The Commissioner acknowledges that later treatment records also show that Plaintiff was diagnosed with significant depression and was prescribed medication. (Def.'s Resp. Br. at 12.)

I find from the foregoing that the record shows more than a "de minimus" showing of impairment such that the ALJ should have moved on to further steps in the analysis as to Plaintiff's depression. Plaintiff is also correct that there is an additional requirement for assessing the severity of mental impairments—the AlJ must apply the special technique set forth in 20 C.F.R. § 416.920a for rating the degree of functional

---

[2] I reject the Commissioner's argument that the Court should discount this GAF score. The argument that this score "was a snapshot of Plaintiff's ability to function at a time when she was hospitalized for abusing alcohol, and thus is not a reflection of her ability to function when following prescribed treatment" is improper speculation and/or a lay opinion. The Tenth Circuit is clear that in choosing to reject a physician's assessment, "an ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original) (quotation omitted). At the very least, if Dr. Purcell's records were unclear on the issue, the ALJ had a duty to contact Dr. Purcell for clarification on that issue. *Id.* I also reject the Commissioner's argument that the GAF score "is not a true medical opinion" that is entitled to any weight. An ALJ can not simply ignore this evidence. *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. 2007) (unpublished) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50).

limitations that are caused by the mental impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1141 (10th Cir. 2010); *Branum v. Barnhart*, 385 F.3d 1268, 1272 (10th Cir. 2004).

Under this special technique, once a mental impairment has been identified, the ALJ must "rate the degree of [the] functional limitation based on the extent to which [the] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2). The "four broad functional areas" that the ALJ must rate in terms of a claimant's functional limitation include "[a]ctivities of daily living; social functioning; concentration, persistence, or pace' and episodes of decompensation." *Id.*, § 416.920a(c)(3).

The regulations require that "[t]o document the application of the special technique, the ALJ's 'written decision must incorporate the pertinent findings and conclusions based on the technique....The decision must include a specific finding as to the degree of limitation in each of the functional areas....'" *Mushero v. Astrue*, No. 09-5164, 2010 WL 2530728, at *2 (June 24, 2010) (unpublished) (quoting 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2)). The severity of the mental impairment can only be determined after rating the degree of functional limitation in each area. 20 C.F.R. § 404.1520a(d). The ALJ errs when, as here, he or she assesses the severity of the mental impairment without applying this special technique. *Mushero*, 2010 WL 2530728, at *2.[3] As in *Mushero*, the ALJ's failure to consider the special technique requires reversal and a remand for further proceedings.

---

[3] An ALJ's finding that mental impairments impose no "significant" limitations does not comply with this special technique. *Id.* at *3

I also agree with Plaintiff that the ALJ's finding that "even giving the claimant the benefit of the doubt regarding the effects of her alleged depression, the evidence fails to support that her combination of symptoms would prevent her from performing simple, unskilled work, requiring only one, two, and three step instructions" is not supported by any evidence. Indeed, this is a boilerplate finding which the Tenth Circuit has found to be improper when it is not based on specific findings regarding limitations from mental impairments. *See Weiderholt v. Barnhart*, No. 03-3251, 2005 WL 290082, at *5 (10th Cir. 2006) (unpublished). This makes sense given the fact that the regulations state that the "(a)ssessment of functional limitations is a complex and highly individualized process." 20 C.F.R. § 404.1520a(c)(1).

The Commissioner asserts, however, that the record is devoid of any evidence that Plaintiff sought treatment for her depression. The ALJ also relied on this lack of treatment in finding that Plaintiff's depression was not a severe impairment.[4] It is argued that the fact Plaintiff did not seek further mental health care is an indication that her symptoms were not as severe as she alleged. I disagree, finding that the fact Plaintiff was not receiving mental health care is not dispositive on the issue.

First, I note that "depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cited with approval in *Allen v. Barnhart*, No. 99-3249, 2000 WL 796081, at *4

---

[4] For example, the ALJ found that Plaintiff failed to follow medical treatment in continuing to drink and drive, in failing to return her patient assistance paperwork for pharmacy services, and voluntarily ceasing taking medications for depression. (Tr. 14-15, 17-18.)

-7-

(10th Cir. 2000) (unpublished)). "Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465.

Second, the Tenth Circuit has stated that "the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. *Grotendurst v. Astrue*, No. 09-2132, 2010 WL 1049791, at *4 (March 22, 2010) (unpublished) (emphasis in original). "This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Id*. "Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations." *Id*. Finally on this issue, the ALJ must consider certain factors before relying on a claimant's failure to pursue treatment or take medication. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). The record does not show that the ALJ considered these factors.[5]

The Commissioner also argue that Plaintiff's exacerbations of depression occurred only in connection with abuse of alcohol. The ALJ also made this finding. (Tr. 15.) Further, the ALJ found that while alcohol abuse is not material to the current issue of disability, "the record also clearly reflects that the claimant experiences no more than

---

[5] Among other things, the ALJ should have considered the fact that Plaintiff gave up taking anti-depressants because it interfered with her sex life and her marriage (Tr. 895), not because of a lack of depression. There was also evidence that mental health care was not always available (*id*. 974), and that she could not afford treatment or medication as she was "financially destitute" and was being supported by her church. (*Id*. 144-45.)

-8-

minimal, psychologically based symptoms when she abstains from alcohol abuse. (*Id.*) This finding is not based on substantial evidence or, indeed, any evidence, and is an improper lay judgment of the ALJ. The record clearly reflects that Plaintiff was diagnosed with chronic, severe and recurrent depression. Dr. Christoff's report upon whom the ALJ relied on reported the opposite of what the ALJ found—that Plaintiff treats her depression with alcohol, not that her alcohol causes her depression. (Tr. 981.) He noted that Plaintiff is currently taking Zoloft for this problem. (*Id.*) Further, "where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using . . . alcohol, an ALJ should 'find that [alcohol abuse] is not a contributing factor material to the determination of disability.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006).[6]

The decision in question utilizes another erroneous standard: impugning Plaintiff's credibility on the grounds that her daily activities were inconsistent with her ability to work and claim of "complete disability". (Tr. 17- 18.) First, the correct standard is "the ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1 (1996); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing 20 C.F.R. § 416.945(c)). The standard is not the inability to perform any level of work activity or, to be "completely disabled" as referenced by the ALJ.

---

[6] Further, as Plaintiff notes, for the ALJ to say that because Plaintiff once drank to excess, she drank as a result of depression, but now that she doesn't drink to excess, she does not suffer from depression, is unsupported.

Second, I agree with Plaintiff that her daily activities were hardly substantial evidence of her ability to work full time on a sustained basis. She spends time at church on Sundays and on other days. (Tr. 32-37.) She tries to read but has a hard time concentrating. (*Id.*) She goes to the grocery store once a week with her mother. (*Id.* 41.) She tries to do a little housework every day. (*Id.*) She might cook every now and then, but mostly relies on simple dishes. (*Id.* 43.) She does not drive because of her seizure disorder. (*Id.* 32.) *See Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("limited activities in themselves do not establish that one can engage in light or sedentary work"). Further, the ALJ's reference to Plaintiff's ability to work in 2001 or 2002 (Tr. 14), years before her alleged onset of disability and during a period where the record contains no medical records, is not probative of whether Plaintiff is currently disabled.

I also find that the ALJ failed to properly develop the record as to other mental impairments noted in the record. Dr. Christoff opined that Plaintiff's coma "probably caused some cognitive impairment". (Tr. 981.) Plaintiff testified as to mental limitations such as forgetfulness, mental slowness, and trouble understanding that began after her March 2007 hospitalization for that coma.[7] This evidence certainly raised an issue requiring further inquiry. It was then incumbent upon the ALJ to delineate just how much mental impairment the coma caused. The ALJ erred by not adequately developing the record on this issue. The same is true of Plaintiff's complaints of small

---

[7] There is evidence supporting Plaintiff's complaints. She forgot to see the neurologist. (Tr. 908.) She forgot to fill out her patient assistance paperwork. (*Id.*) She alleged problems with concentration (*id.* 128, 280-81).

seizures. (*Id.* 295-96, 276.) While the ALJ acknowledges that there is evidence of such seizures, stating that a treating source classified them as "complex partial seizures, characterized by blank staring episodes lasting thirty seconds" (*id.* 17), she then completely discounted their impact on Plaintiff's ability to work. (*Id.*) This also is error.

The Commissioner's failure to develop the medical record finds authority in the regulations, requiring re-contacting the treating physician when his reports are "inadequate for us to determine whether you are disabled." 20 C.F.R. § 404.1512(e); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Alternatively, if such evidence is not available, the ALJ must ask the claimant to attend one or more consultative examinations. 20 C.F.R. § 404.1512(f). Further, the Social Security Administration has a specific form to assess Mental RFC attached at POMS § DI 24510.O90. This form, which contains a number of limitations that can be caused by mental impairments, was never filled out in this case. *See also* POMS § DI 24510.O61.

Applied to the facts of this case, Dr. Christoff's report, which included a mini-mental status evaluation, was either inadequate or contained an ambiguity which had to be resolved. (Tr. 981-82.) For example, he stated that Plaintiff's memory was not very good and that she likely incurred "some cognitive impairment" as a result of her coma but did not state what he meant by this or how it impacted her ability to work. Given the fact that he was a neurologist, and not a mental health provider, this may have been an area he felt was outside his expertise. Indeed, Plaintiff was only referred to him in connection with her seizure disorder, not her depression or other mental impairments. (*Id.* 981). For the ALJ to suggest that Dr. Christoff's mini-status evaluation of Plaintiff

conducted in order for him to assess Plaintiff's seizure disorder somehow provides enough detail to evaluate her mental limitations is mere conjecture.

Further, the Commissioner's argument that Dr. Christoff felt Plaintiff's mental impairments were not severe as he recommended only conservative treatment is also unsupported—it does not appear that Dr. Christoff was asked to or provided an assessment about what treatment was necessary for her mental impairments or the severity of her cognitive impairments. This also is an improper substitution of the Commissioner's judgment for that of Dr. Christoff. *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). Further, Dr. Christoff's statement that Plaintiff might check with vocational rehabilitation is not necessarily an endorsement that she can work. In the context of the patient's depression and cognitive impairment, it could just as easily be interpreted as a request for additional tests regarding the patient's ability to work. At the very least, his report as to the level of severity of Plaintiff's mental impairments was ambiguous, requiring that he be contacted for clarification on this issue.

The same analysis would apply to Dr. Salek's one page report, which indicated that Plaintiff reports the inability to work and "is being treated accordingly and is planned for follow up visits." (Tr. 136.) This is ambiguous, as it does not state what treatment Plaintiff is receiving or whether Dr. Salek actually agrees from a medical perspective that Plaintiff is unable to work. The fact that Dr. Salek reported in February and April 2008 that Plaintiff was well-groomed, alert, and fully oriented (Tr. 971, 978) cannot be construed to be an assessment of Plaintiff's depression or the limitations, if any, caused by her mental impairments, at least without verification from Dr. Salek.

Further, Dr. Salek does not appear to be a mental health provider, and does not render opinions as to Plaintiff's mental health.

The fact that Plaintiff's counsel did not raise these issues should not foreclose Plaintiff's rights here, considering the substantial evidence that existed regarding Plaintiff's mental impairments. In addition to the evidence already discussed, the record shows that Plaintiff had been in a psychiatric ward at least twice; there was an attempted suicide in 2007; Plaintiff was in a coma for nine days which may have caused brain damage; Plaintiff was prescribed numerous psychotropic medications, including Prozac, Lexapro, Celexa, Zoloft, Trazadone, and Paxil; she attempted to drown her sorrow in alcohol, also requiring hospitalization; Plaintiff had been placed in special education; and Plaintiff alleged psychological problems in her forms as well as at her hearing. Thus, the degree and extent of Plaintiff's mental impairments, not just her depression, were at issue in the record, requiring either sufficient evidence from the medical providers for the ALJ to assess Plaintiff's mental impairments or a mental consultative evaluation that fully considered all of Plaintiff's limitations.

I also find that a remand is appropriate to the Commissioner based on the Psychological Evaluation of Dr. David Benson that Plaintiff attached to her Motion to Remand.[8] Dr. Benson conducted testing on December 8, 2009, after Plaintiff was referred to him by her counselor at Rehabilitation Services and several months after the ALJ's decision. (*See* Mot. to Remand, ECF No. 12-1.) His report indicates that after

---

[8] I note that Judge Kane issued a Minute Order on May 3, 2010, ordering that a ruling would be withheld on the Motion to Remand until the parties submitted their briefing on this appeal.

Plaintiff came out of the coma in 2007, significant problems were observed and that Plaintiff has had difficulty functioning since then. (*Id.* at 2.) It also notes that Plaintiff has marked problems with concentration, attention and memory as well as other cognitive problems. (*Id.* at 3-10.) Dr. Benson diagnosed Major Depression Recurrent, Alcohol Dependence in Remission, Anxiety Disorder NOS, and Cognitive Order NOS on Axis I and Borderline Intellectual Functioning and Dependent and Self Defeating Personality Traits on Axis II. (*Id.* at 11.)

Dr. Benson's report also states:

> In her present state, Ms. Zuckerman does not appear to be capable of truly competitive performance in the work place over the long term. Nor could she achieve completely independent functioning. There will have to be an awareness of this in working with her. It would appear that in her present position she is particularly ill-suited for employment because of the need for speed and general positive competence, which she does not have. She may have to seek work where the employer is willing to make accommodations for her limitations.

(Ex. 1 to Mot. to Remand at 11.) Further, the report discusses how Plaintiff is struggling with her Wendy's food preparation job performed only several hours a week. (*Id.* at 2.)

I agree with Plaintiff that Dr. Benson's report contains new and material evidence not available at the time of the administrative hearing. I also find good cause has been demonstrated for the failure to incorporate such evidence into the record before the ALJ and Appeals Council because of Plaintiff's inability to afford mental health treatment. I also agree that the Commissioner's decision may well have been different if this evidence had been before him, as it shows significant and severe mental impairments which impact Plaintiff's ability to work. Accordingly, I find that this report must also be

considered on remand. *See Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (citing 42 U.S.C. § 405(g)). However, since I am remanding based on a number of errors noted in this decision from the briefing as well as Dr. Benson's report, I deny as moot Plaintiff's Motion to Remand, which sought to remand only on the basis of Dr. Benson's report.

I reject the Commissioner's argument that Dr. Benson's report does not pertain to the relevant time period. It can be inferred from Dr. Benson's report that Plaintiff's mental impairments existed, at least in part, from the time of her coma in 1997. To the extent it is unclear from his opinion to what extent the impairments and problems he diagnosed existed during the relevant time period, the ALJ should contact Dr. Benson for clarification of this issue. I also disagree with the Commissioner's argument that Dr. Benson's report is not entitled to weight because it is inconsistent with the record as a whole. The record indicates, consistent with Dr. Benson's report, that Plaintiff suffered depression and some level of cognitive impairment from her coma. To the extent the record was unclear or undeveloped as to the level of Plaintiff's mental impairments, Dr. Benson's report is new, material evidence as to same.

Finally, the Commissioner's argument that Dr. Benson's report should not be given weight because he relied on Plaintiff's subjective complaints is frivolous. First, the report clearly was not based only on subjective complaints of Plaintiff, it was also based on testing. Further, the Tenth Circuit has made clear that "[a] psychological opinion need not be based solely on objective 'tests'; those findings "may rest either on observed signs or on psychological tests."" *Thomas v. Barnhart*, No. 04-7141, 2005 WL

2114163 at *4 (10th Cir. 2005). The Tenth Circuit has also held that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Id.* (quoting *Robinson*, 366 F.3d at 1083). As in *Thomas*, the Commissioner's argument that Dr. Benson's report can be rejected because it was based on subjective complaints or Plaintiff's responses to his psychological tests impermissibly puts him "in the position of judging a medical professional on the assessment of medical data." *Id.*

Going back to the parties' briefing, I also find that the ALJ erred by not stating the weight he assigned to the medical evidence. The ALJ did not state who was Plaintiff's treating physician(s) or what weight was given to treating physician opinions. She also did not state what weight she gave to psychiatrist Dr. Purcell's opinion about Plaintiff's depression or why the ALJ appeared to give greater weight to the consultative examination of Dr. Christoff, a neurologist. There was simply no weighing at all of the evidence. This is error. The Commissioner's regulations provide that the ALJ will evaluate every medical opinion in the record, and unless the ALJ gives a treating source's opinion controlling weight, he or she must consider several factors in deciding the weight that should be given to any medical opinion. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)).

The ALJ also did not explain why she appeared to give weight to certain medical opinions and to disregard others. Finally, the ALJ's apparent reliance upon portions of Dr. Christoff's opinion while rejecting his finding that Plaintiff probably had some cognitive impairments is also error. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.

2003) (The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying only on those parts favorable to a finding of nondisability).

### 2. Whether the ALJ Established His Burden at Step Five

At step five of the evaluation procedure, the Commissioner has the burden of showing other work that the Claimant can perform in substantial numbers, despite his or her impairments. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ may rely on the testimony of a vocational expert ["VE"] to meet the Commissioner's burden at step five, but only if the hypothetical posed to the VE relate(s) with precision all of a social security claimant's impairments. *Hargis*, 945 F.2d at 1492.

Because of ALJ's failure to adequately consider Plaintiff's mental impairments, I find that the hypothetical upon which the ALJ relied at step five was faulty. The Tenth Circuit explained in the *Mushero* decision how the ALJ's failure at step two to adequately assess a claimant's mental impairments impacts the later steps, as follows:

> Because the ALJ never made any findings regarding functional imitations, there is no basis to determine what limitations should have been included in the hypothetical questions. And we cannot consider the error harmless. Even if an impairment is not severe, it does not become irrelevant. *All* medically determinable impairments, including non-severe impairments, must be taken into account in assessing a claimant's RFC. . . ."While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may-when considered with limitations or restrictions due to other impairments-be critical to the outcome of a claim."

*Id.*, 2010 WL 2530728, at *2 (quotations omitted). Thus, as previously explained, this case must be reversed and remanded.

On remand, the ALJ should consider all the impairments borne out by the record. In addition to the impairments previously discussed in this Order, the ALJ should

consider Plaintiff's inability to drive (Tr. 962, 981), *see Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), evidence showing an inability to sustain concentration, persistence, or pace (Tr. 43, 45-46, 51, 967-968), and evidence as to fatigue and headaches (*id.* 37, 28, 46, 103).

III.  CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).  In light of this, it is

ORDERED that Plaintiff's Motion to Remand (ECF No. 12) is **DENIED AS MOOT**.

Dated March 31, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge